UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RALPH GODOY,

    Plaintiff,

v.

JAGUAR LAND ROVER NORTH AMERICA, LLC,

    Defendant.

Case No. 23-cv-03771-JCS

**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

In August 2018, Plaintiff Ralph Godoy leased a vehicle from Defendant Jaguar Land Rover North America, LLC ("JLRNA") and then, at the end of the lease in August 2021, he purchased the vehicle. Subsequently, he brought this action in San Francisco Superior Court asserting claims under the Song-Beverly Act Consumer Warranty Act, California's so-called "lemon law," against JLRNA. JLRNA removed to this Court and now brings a Motion for Partial Summary Judgment ("Motion") asking the Court to hold, as a matter of law, that Godoy's damages, if any, are limited to those based on the amounts paid or payable by Godoy for the August 9, 2021 purchase of the vehicle and do *not* include any amounts paid under the lease. A hearing on the Motion was held on October 30, 2024. For the reasons stated below, the Motion is DENIED.[1]

## II. BACKGROUND

### A. Factual Background

On August 10, 2018, Godoy entered into a three-year lease agreement with JLRNA for a Land Rover ("Vehicle"), with total required payments under the lease in the amount of $46,933.45. Declaration of Bryan Reynolds ("Reynolds Decl."), Ex. 1 (Lease Agreement).

On January 14, 2019, Godoy brought the vehicle to the dealer for service complaining that

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

1  the infotainment screen was freezing up. Reynolds Decl., Ex. 3. The repair order reflects that a
2  download fixed the problem. *Id.* On September 3, 2020, Godoy brought the vehicle in for
3  service and complained that the infotainment system was resetting itself and a check engine light
4  was on. Reynolds Decl., Ex. 4. The repair order states that the service department was not able to
5  duplicate the problem. *Id.* On February 26, 2021, Godoy brought the vehicle in for two-year
6  service. Reynolds Decl., Ex. 6. Godoy complained that the buttons that control the side view
7  mirror were not working and a new mirror switch was installed. *Id.* Godoy also complained that
8  the Bluetooth sometimes did not function properly. *Id.*

9  On July 30, 2021, Godoy brought the Vehicle to the dealer for service complaining that his
10 air conditioner was not functioning properly. Reynolds Decl., Ex. 7. The problem was confirmed
11 and repairs were performed. *Id.* On August 9, 2021 Godoy entered into a finance contract for
12 purchase of the Vehicle with lender Bank of America. Reynolds Decl., Ex. 7 (loan agreement).
13 The total amount financed was $49,047.13, with 72 payments of $742.79 to be made to the lender
14 between September 9, 2021 and August 9, 2027, for a total of $53,480.88 paid or payable. *Id.*

15 On February 15, 2022, Godoy brought the Vehicle to the dealer complaining that the
16 navigation screen was freezing. Reynolds Decl., Ex. 8. On July 19, 2022, Godoy brought the
17 vehicle to the dealer for service complaining of a check engine light, poor shift quality, and
18 defective parking sensors that were going off while driving. Reynolds Decl., Ex. 9. The warranty
19 on the Vehicle expired on August 9, 2022. *See* Reynolds Decl., Ex. 3.

20 Godoy brought the instant action on May 11, 2023 asserting Song-Beverly Act claims for
21 breach of express and implied warranties and violation of Section 1793.2.

22 **B.   The Motion**

23 In the Motion, JLRNA asks the Court to hold, as a matter of law, that because Godoy "was
24 under no obligation to purchase the vehicle, yet did so, his suit against JLRNA three years later
25 must be based on the purchase, not the prior lease." Motion at 6. JLRNA reasons that "[i]n the
26 reverse situation, if he had filed this suit prior to his lease contract's expiration, he would have no
27 right to later seek to recover the amount of the lease purchase option." *Id.* (citing *Crayton v. FCA*
28 *US LLC,* 63 Cal. App. 5th 194, 204 (2021). Therefore, it contends, Godoy's repurchase damages

2

should be capped at $50,177.10 (the $53,480.88 total purchase price with a mileage offset of 7,413 factored in). *Id.* at 7. According to JLRNA, the total civil penalty available would be two times that amount, or $100,354.20, bringing the total amount possibly available to plaintiff to $150,531.30. *Id.*

In his Opposition brief, Godoy distinguishes *Crayton,* noting that in that case, in contrast to the facts here, the plaintiff did not purchase the vehicle at the end of the lease and therefore was not entitled to recover the residual value (*ie.*, the guaranteed purchase price under the lease option). Opposition at 2-3. Apparently misunderstanding JLRNA's argument, Godoy asserts that "Defendant here misconstrues *Crayton*'s holding to argue it stands for the theoretical proposition that under no circumstances can a consumer recover the 'residual value' of a vehicle." *Id.* at 3. Godoy goes on to argue that the "actual price paid or payable by the buyer" for the purposes of determining restitution under the Song-Beverly Act" includes the price payable by a lessee to purchase the car at lease end. *Id.* at 4. According to Godoy, JLRNA also relies on *Crayton* to argue that "lessees are prohibited from maintaining possession of the vehicle and waive remedies if they do." *Id.* at 5. Godoy goes on to assert that this argument (which JLRNA did not make) is wrong. *Id.* Godoy further argues that his lease end purchase cost should be included in his restitution damages because to hold otherwise would undermine the remedial purpose of the Song-Beverly Act. *Id.* at 7. Finally, he argues that JLRNA should have brought this motion as a motion in limine and that a motion for summary judgment is not the proper vehicle for its request. *Id.*

In its Reply, JLRNA points out that Godoy does not dispute that he is not entitled to his lease payments as restitution under the facts of this case and that the parties *agree* that Godoy's restitution damages, if any, include the purchase price of the Vehicle. Reply at 1-2. It argues further that its motion is proper, either as an early motion in limine, or because the Court has the power under Civil Local Rule 56-3 to deem issues decided in a summary judgment order as issues established for the purposes of trial. *Id.* at 2.

**III.   ANALYSIS**

Under the Song-Beverly Act, "if the manufacturer or its representative in this state does

3

1  not service or repair [a vehicle] to conform to the applicable express warranties after a reasonable
2  number of attempts, the manufacturer shall either replace the [vehicle] or reimburse the buyer in
3  an amount equal to the purchase price paid by the buyer, less that amount directly attributable to
4  use by the buyer prior to the discovery of the nonconformity." Cal. Civ. Code § 1793.2(d)(1).
5  The Act further provides:

> In the case of restitution, the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.

11  Cal. Civ. Code § 1793.2(d)(2)(B). Under the Act, "a buyer of a new motor vehicle shall include a
12  lessee of a new motor vehicle." *Id*. § 1793.2(d)(2)(D).
13      California courts have held that " 'actual price paid or payable,' includes all amounts
14  plaintiffs became legally obligated to pay when they agreed to buy the [vehicle]." *Mitchell v. Blue
15  Bird Body Co*., 80 Cal. App. 4th 32, 38 (2000). In cases involving lessees, "the 'price paid' under
16  the statute is not the MRSP, but only what Plaintiff has paid under [the] lease." *D'Amico v. Ford
17  Motor Co*., 2020 WL 2614610, at *2 (C.D. Cal. May 21, 2020) (citation omitted). In *Crayton*, the
18  court made clear that where a lesee has not reached the end of the lease and exercised the option to
19  purchase the vehicle for the residual value, restitution damages do not include the residual value
20  because the lesee "was not under a legal obligation at the time of the lease signing to purchase the
21  vehicle for the residual value[.]" 63 Cal. App. 5th at 204. The court explained that this conclusion
22  was "consistent with the Act's use of the term 'restitution[,]' " and the Legislature's intent "to
23  restore the status quo ante as far as is practicable." *Id.* (internal quotations and citations omitted).
24  This means that "restitution" under the act "cannot leave a plaintiff in a worse position than when
25  he or she purchased the vehicle" but also cannot "leave a plaintiff in a better position, rather than
26  merely restoring her to the status quo ante."  *Id.*  (internal quotations and citations omitted).
27      JLRNA relies on *Crayton* to argue that because a lessee who did not exercise the purchase
28  option in their lease cannot recover the residual value of the vehicle (which the lessee did not, in

4

fact, pay), a lessee who *did* exercise that option at the end of the lease cannot recover as restitution the lease payments it *did* pay and is limited to the purchase price of the vehicle. *Crayton* simply does not address that question, however. Nor does its reasoning support the conclusion JLRNA urges given that returning Godoy to the status quo ante would, arguably, mean allowing him to recover all the payments he made on the vehicle, both under the lease and for his purchase at the end of the lease.

Neither side has cited any on-point authority whatsoever addressing what restitution damages are available to a lesee who makes all of the lease payments and goes on to purchase a vehicle for its residual value. Plaintiff argued at the motion hearing that it is obvious from the "paid or payable" language in Section 1793.2 that both the lease payments and the purchase price are recoverable under the Song-Beverly Act but could not point to any case that had actually addressed that question. Defendant, on the other hand, argued that as a matter of contract, the warranty remedies Plaintiff seeks are available only as to the purchase contract. However, Defendant also could not point to any case that held as much or even discussed the issue. Given the remedial purpose of the Song-Beverly Act, Defendant's failure to cite any on-point authority in support of its position, and the reasoning of *Crayton* indicating that Song-Beverly Act remedies are intended to return the plaintiff to the status quo ante, the Court concludes that JLRNA has failed to establish, as a matter of law, that Plaintiff cannot recover *both* the lease payments and the purchase price of the Vehicle under Section 1793.2.

## IV.   CONCLUSION

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated: November 5, 2024

_____
JOSEPH C. SPERO
United States Magistrate Judge